on behalf of the people, Paul. Thank you, Mr. Gutsch. Good morning, your honors. Please support this case. Come to the court this morning because the evidence that was presented at trial did not coincide with the elements of the crimes that were charged. The state contended at trial that Alejandro Rodriguez fired at two members of an opposing gang in two separate instances on the weekend of Labor Day 2011. Why are we focusing on what the state contended as opposed to what the evidence actually showed? Because we're talking about sufficiency of the evidence and whether any of the elements of the crimes that were charged did not coincide with the elements of the crimes that were charged. I mean, why are we focusing on what the state said at trial? We should be focusing on what the evidence actually showed, shouldn't we? Well, I was just about to say that the state also maintains that on the appeal. So I think that's convincing evidence that that's what the evidence showed at trial. If the state is still maintaining that the evidence showed that the targets were the two gang members, not the cars or the houses, then even the state is conceding that the evidence was that these two gang members were the target. Well, I think the state is trying to be consistent with their theory at trial, which certainly is actually laudable. My question is whether the defense is changing theory now. I mean, you're saying that the evidence showed that he was shooting at these two individuals? Yes. Your counterpart at trial, the defense attorney at trial, argued the exact opposite, that he was shooting at the houses. Well, I don't know that that was really the argument. Well, let me read you a portion of the argument. It says, so how can we say that Alejandro Rodriguez took a substantial step toward killing Ignacio Perez when Ignacio Perez says he didn't shoot at me? Mary Nino says he wasn't shooting at a person, he was shooting at a house. And only Fernando Arroyo says he was shooting at somebody. And it happened on Superior Street. Is that beyond a reasonable doubt? How can we say there was an intent to kill? That's your counterpart at trial was arguing that he was shooting at a house and not at a person, so there was no intent to kill. So he's acquitted at trial based upon that argument. Now you're seeking to acquit him on appeal of the offenses based on the exact opposite argument. Isn't that correct? Well, it's not the exact opposite argument, because even if this court finds that the houses were the targets, that doesn't mean that the cars were the targets. What about the common law doctrine and accepted doctrine in case after case of transferred intent? You know, let me ask you a hypothetical. You just buy a brand new car and you pull it up in front of your house and your buddies pull up and they've just gotten their concealed carry permits and they both have their firearms and they want to do a little target practice. They ask you, can I set a couple of cans on the hood of your new car? We'll use your house as a backdrop in case we miss. Would you let them do target practice? Well, no. Okay. Thank you. It's transferred intent. That's why. The state is arguing that the intent to murder transfers to the property. I mean, if you read the state's brief, that's basically the argument they're making. I think that's something entirely different than the intent to How is it different than the hypothetical I just gave you? Well, the intent to hit someone, the intent to kill or cause great bodily harm is different than the intent to knowingly damage property. It's greater. Correct. So, it's the same the analogy that I like to think of is we have felony murder charges because you don't want to have to show intent when somebody's doing a bad act and somebody dies in the process. So, there is no transferred intent from committing a felony such as a property crime in transferring that intent to a murder. So, why is the opposite true? I think the intents are, the state is asking to transform the intent, a different state of mind than a property crime to a property crime. With the same act, can one intend to shoot at one object and knowingly end up shooting at another object? It's possible, but I don't think that the facts in this case show that. So, even if this court believes that they were shooting at the house, this giant object, there's no evidence that the cars were even relevant to the calculation. The shootings were only seconds long. I do believe that the evidence shows that the targets were actually the gang members despite that. This was broad daylight. Correct. And this person's driving by in a car, presumably has the ability to see the area around the defendant, see the area around where he's shooting. These cars are not matchbox cars. I mean, they're regular sized vehicles. You're driving down the street. I mean, it's pretty apparent that there are vehicles sitting there and you're shooting either three times in one incident or three to four times in one incident, at least a moving vehicle. So there's no substantial probability that you might hit one of those vehicles? Well, I don't think the evidence shows that. If it was a scenario where the gang members were standing next to an object, or the one had a bike with him, if the bike was damaged, the state, the problem in this case is that the state failed to show that under the circumstances, this was a knowing damage to either of the property items. But wasn't this a, this is a residential neighborhood that was clearly established by the record, correct? Correct. And on this residential, in this residential neighborhood, there's the street that has cars parked on it. That was also established by the record, correct? Yes. And this is what, a holiday weekend, a Saturday or Sunday or something where it is likely that there would be more people around than if it were maybe a work day. That was established. It's a holiday. It's a Saturday. And so you can make certain that you can infer certain things from that date that this is a residential neighborhood where people, cars, and buildings are present, correct? Well, it's obvious that houses and cars are present, yes. All right. And he's in a moving car. I mean, what, and what is he, just a bad shot? I mean, is that, is that what we're saying here, that he, or you'd like us to believe that he's just a bad shot and that he should be rewarded for being a bad shot under the circumstances? Well, I don't think he should be rewarded, but I don't, I think the state erroneously charged. I mean, he was obviously guilty of aggravated discharge under A2, but the state charged him under A1, which is knowingly shooting at a house that he had reason to know that was occupied. I think you really have to make a lot of inferences to say, well, he should have known the houses were occupied just because it's a Saturday or a Labor Day weekend doesn't guarantee that the houses were occupied. There was no outside signs of occupation. There's no lights on, or there's no evidence of it. I thought there was somebody sitting on a porch. Across the street. But there's somebody out there. So it's not like this is a ghost town. And there was somebody on the sidewalk. Correct. But that doesn't, from that you can't really infer that the house is occupied, I don't think. I don't think that's sufficient evidence because that's an element of crime that has to be proven beyond a reasonable doubt. I think that's a fairly far stretch to make just because it's a house on a weekend and there's a car on the driveway. I mean, that was the evidence that the state is relying upon. Again, I think the evidence shows that the intended victim was actually on the sidewalk, not associated with the house or the car. Is there evidence in this record that Mr. Rodriguez either lived in this neighborhood or had some familiarity with this neighborhood? He lived several blocks away, yes. And the driver of the car at the time was a member of the gang that was the rival gang, also the two gang members were. But I think if you, even if you think that the house was the intended target, I don't think that that proves that the cars were known to be damaged. I do think there's a difference in... Well, you shoot and miss. Yeah, I assume you're familiar with firearms, but you shoot and miss and you're in an area that is a residential neighborhood. That's going to hit something and there's a substantial probability that it's going to hit a house or possibly a vehicle or maybe, worst case scenario, another human being, another unintended target, right? Yes. But the elements of the charge are that he knowingly damaged the property. It seems to me that you're trying to suggest that knowledge always has to be that this is your target, you can only be charged with that, charged and convicted of that particular target. That's actually not what I'm trying to, what I'm trying to say, that would be an intentional shot. Knowingly is under the circumstances, and I don't think that the state proved under these circumstances that knowing damage to either the car or the house was a certainty. They have to show based on that, they don't show the proximity of the gang member to the houses, they don't show really where the shots exactly were fired from so that we can infer that damage to the houses or the car was a certainty. And I think that's the element, that's the problem with the evidence in this case. It's not that just because the gang members were the targets, they can't prove that he knowingly damaged the property. It's that they didn't do that in this case. What's the evidence that your client aimed the gun and fired the gun in the direction of the gang member? Yes. It's not that he shot it in the air as a prank, he pointed it at a human being. And missed that human being. One of the human beings was on the corner, so he wasn't necessarily even by the houses. The cars were parked on the side of the houses. So it's just not clear from this evidence that even in shooting at the gang members, that it was knowingly going to damage anything around because the state didn't establish that at trial. How are you defining knowingly? And you distinguished intentionally already. So how are you defining or how are you asking us to define knowingly? Well, it's defined as basically that you have a certain that you're almost certain to accomplish what you're set out to do. So in the cases cited by the state and in the examples, if you throw a brick at an occupied car, you're knowingly intentionally trying to hit that car.  This is a little bit different scenario because the gang members aren't next to the house. They aren't next to the car. They're on the front sidewalk. They're moving. The car is moving. But bullets travel faster than bricks, we can take general notice of, can't we? Correct. And farther, depending upon how strong you are when you throw that brick. Right, but in their lives, the problem with the state's evidence is they don't show that under the circumstances that this damage was knowingly caused. They don't show the proximity of the gang member to the house. They don't show the proximity of the gang member to the car. They don't show the angle. They're not even exactly clear on where the shots were fired from in relation to the gang members or the houses and cars. And so that's why the evidence in this scenario isn't sufficient. Had the state charged it differently, then it would have coincided with the evidence that they actually did show. There was evidence where the person was located in each of the incidents. There was evidence where the houses were in each of the incidents. There was evidence where the cars were in each of the incidents, correct? There was some evidence, but it wasn't definitive. The lady that was across the street testified in one manner and then marked the map in another. So it's not exactly entirely clear where the shots were fired from. She was unable to see the one gang member in that incident. So it's unclear where he was in relationship to where the shots were fired. You're not arguing this to a jury, though. The standard of review was the Collins-Jackson standard, where, I mean, based on the evidence that we have in the record, any rational trier of fact could have found this. And you're pointing out maybe certain deficiencies in the evidence, but are you saying it's entirely deficient and there's an entire lack of evidence on these points where a jury couldn't rationally decide that the car was in the line of fire of the person and the house was in the line of fire of the person? I think that the evidence as presented fails to establish the mental state involved. That knowingly damaged, that he was shooting at a house that he knew was occupied and also that he knowingly caused the damage to the car. So I think that the evidence really is insufficient to prove the mental state of knowingly. That's what these factors go to. On appeal, we're looking at whether the evidence that was actually induced can establish this mental state because, as I said, the state is still maintaining that the gang members were the intended targets. And so under this scenario, we've got to decide whether the evidence is sufficient for the jury to decide whether he knowingly damaged either the car or the house. And so I think that's the distinction. It's not even these variances come into play in deciding whether that mental state was... When you're talking about the mental state, one of your arguments is that the word at in the statute relates to intentionally or purposefully, I shouldn't say intentionally, purposefully targeting a certain object. The legislature indicated that there were two mental states appropriate here, knowingly and intentionally. And we've established from your argument that those are two totally different mental states, correct? Yes. So tell me how the mental state of knowingly fits in with purposefully targeting because your argument on purposefully targeting seems to me to be that you're intentionally shooting at somebody. So if I'm purposefully targeting the gang member, I'm shooting at the gang member. I'm intending to shoot at the gang member. So how am I knowingly, intentionally shooting at the gang member? How does knowingly fit into that paradigm? With relation to the house? No, with relation to the house. That's where the statute varies. Shooting in the direction of a gang member is sufficient, but shooting at an occupied building is more essential. I understand, but shooting at the house, the legislature also put in the mental state of knowingly. Right. Okay. Your argument is that the word at means purposefully targeting, which I read take to mean intending to shoot at that person. I'm intending to shoot at that person. Correct. Well, at that house. Okay, I'm intending to shoot at that house. Yes. Okay. How does knowingly fit into that paradigm? Because now your argument is I am knowingly, intentionally shooting at the house. Yes. Okay. Well, knowingly is different. Knowingly is theoretically less than intentionally. You're shooting with an idea that something is practically certain to happen. Correct. So I'm just trying to figure out where does knowingly fit into that statute? The way the statute is phrased, it says intentionally and knowingly, and then it lists all nine ways of committing the crime. So yes, in the first subsection where you're shooting at the house, knowingly may subsume intentionally only for that subsection because of the way it's worded, that you're shooting at, like if I throw a snowball at somebody. So as it relates to A1, your argument is knowingly in the preface is surplusage. I think it comes together with intentionally just because of the way that A1 is worded. Is it surplusage? I mean, because it comes together with intentionally. Intentionally is the mental state. So I'm intending to shoot at the house. So there is knowingly. No knowingly. It's all intentionally. Well, I think knowingly is much easier to prove through circumstantial evidence than intentionally. So actual intent. If somebody is shooting knowingly at a house, they're still targeting the house, but you don't have to show that they intentionally hit the house. I mean, I don't think at means hit. At means shooting at the house. Your argument, again, this whole dynamic of shooting, they're shooting from a car that's moving, correct? Was the car moving or did it stop? Well, it pauses briefly during the shots. And the human beings, are they stationary or are they moving? It seems from the evidence that they're actually arguing with Alejandro or the driver during the incidences. So it's not clear that they're moving in any vast form. And it obviously wasn't clear that they were going to that the defendant was going to hit the intended target when he fired, correct? Well, he didn't. Right, he didn't. And generally speaking, if the target is moving or the position that you're shooting from is moving, it's going to be more difficult to hit the target. It's going to hit something else if you miss your target, right? Based on? That's what happened. That is what happened. Your suggestion is that the evidence doesn't show that your client had that knowledge. Well, my suggestion is that the State should have charged what the evidence showed and that perhaps they must have in this instance. But the evidence showed aggravated discharge of a certain kind, but they chose to choose a different kind. I know my time is up here. We'll have time for a vote. Mr. Hoffman, you may proceed. Good morning, Your Honor, Counsel, and pleased to call you. I am Jay Hoffman. It is my pleasure as always to represent the people of the State of Illinois before this honorable court. First of all, let's make something clear. Although I stated in the brief that there is evidence that the defendant was shooting at the two rival gang members, I also argued quite extensively, I think, that there was also evidence that he was shooting at the house, as Justice Burke pointed out, was specifically argued by the defense counsel below. There's the evidence that Mary Nino in the Columbia shooting said she didn't see anyone on the street. She didn't see the defendant shooting at any person. She saw him shooting at the house. There's also the testimony that both of the victims, one told the police, well, I didn't see anyone shooting at me. I heard the car go by. I heard the shots, but I didn't see anyone shooting at me. The other victim likewise said, I didn't see anyone, I didn't see him shooting at me. Plus, the defendant's then-girlfriend testified that when she called him and talked to him, he said, I'm in jail for shooting at a building. So there's clearly evidence that he was shooting at the building. Was Perez the person in the Nino where he's at the same incident? Yes, Perez was the Columbia, that's the Nino, I think the other gentleman's name was Gonzalez, that was the Cane Com. And while we're on this, if I may interrupt a second, my recollection of the testimony from Ms. Alfaro, the woman smoking a cigarette, was that she heard the car go by and heard the shots, so that the indication there is that both the victim and the car were moving at that time. The Columbia shooting is different. Ms. Nino said she saw the car stop twice, once in front of her house or just to the east of her house, and then again to the west, right in front of the home she said was shot at, and that a defendant got out, sat on the window on the passenger side, and shot while the car was stopped. And I believe that was the co-defendant's testimony too. The defendant there, I'm sorry, the other gang member there, Gonzalez, testified that he was arguing with them, so the indication is both the victim and the car in that instance were stopped. I'm sorry, Justice, you had a question? No, no, I mean, the shooting at the house, I mean, there seems to be plenty of evidence in the Nino situation that he was shooting at the house, but what about the other one? Is there any such evidence of shooting at the house? Well, again, there's the testimony of Gonzalez that he stopped, was arguing with him, that the defendant got out, put the gun on the thing, and shot, but he said he did not see him shoot at him, and the defendant's girlfriend, again, testified that when she talked to the defendant, he told her he was in jail for shooting at a building. I want to shift gears a little bit and we can get back to this if the other justices want to, these other points, but how did you, how did the state prove this 1,000 feet within a school with the testimony of Sullivan and the neighbors? You're asking the distance or you're asking the existence of the school? Existence of the school. Unlike in Ortiz and, excuse me, Cabeza. Cardenio. Cardenio. Cardenio. Cabeza's hit, sorry. In each of those cases, there was simply an officer who testified and there was pictures in one regarding a church, showing there was church, but there was no testimony on the date. In Cardenio, this court specifically said, well, if there is some indication of how the officer knew this, and if there had been some testimony from the neighbors about it. And here we have both of that. The officer said that he had been working in this area for six to eight years, that he knew that this was a school, that he saw kids at the school, and he knew it was in existence at the time. So that's a timeline going back. Plus At the time of what, though? He knew it was in existence at the time of trial? Or during the entire six years? He testified that it was still a school. But he also testified that when he goes by, when he went by the school, he sees the kids there. And he testified that he had been, again, either six or eight years, he'd been working in that area, and was therefore familiar with it. But he never testified for the six or eight years this was an operating school? He never testified that it was an operating school, but he testified he'd been doing it for that time, and he had been passing, he passed the school and saw kids there. In conjunction with that, if that's not sufficient, the fact that he went back six years, in conjunction with that, we have the testimony of both Ms. Arroyo and Ms. Nino, who looked at People's Number 28, the aerial photographic map, and said, yeah, this is an accurate representation of my neighborhood at the time. And there, on the map, is identified Brady School. And in addition to that, Ms. Nino said, yeah, there's a school at the end of my block. And so there's a school building? She said there's a school. Well, again, I mean, Cardenia's pretty specific, you know, if we were to follow that case, that there has to be some testimony, and it's really not that difficult for the State to put this in. I don't know why we keep going around the block on this, but for an officer or a neighbor or somebody to say, on the date of the shooting, this was a school. Did anybody say that in this case? Nobody said that in as many words. And you're right, Your Honor, they could call a teacher and say, yeah, I taught at that school and it's been a school on that date. But our position is that Ms. Nino, the testimony of both Ms. Nino and Ms. Arroyo was, Alfaro, I'm sorry, was that this was their neighborhood at the time the school was there. The officer testified that it's been a school for a while, and Ms. Nino testified that on that date, this was my neighborhood and there was a school near my block. What about the distance from the school? Well, I don't think there's any doubt that the distance is sufficient. Counsel says, well, they took it from 17 feet up from the sidewalk. Well, that cuts against them. Ms. Nino's testimony was clear that the cars stopped in front of the buildings that were shot at, which means it's closer to the school, which is on the north side of the street, down at the end of the block. The homes shot at were on the south side of the street. Plus, the officer testified that it was, I think, 854 feet, so that gives you 146 feet lag difference. Plus, again, as I said, if you look at what I believe was confusing, Ms. Nino put this X where she said the cars stopped. My take is that she understood to me, well, where did it stop the first time? Because she testified it stopped in front of her house and then stopped again in front of the house it was shot at. Even if you take from the X and use a caliper as someone on sale might, or use a ruler or whatever, and measure by the distance, you can see that the way the crow flies, it's less than 1,000 feet to the property. And again, counsel also says, well, they didn't measure in a straight line. Well, that cuts against them, too, because the shortest distance is a straight line. And so, for it to be less than 1,000 feet by a zigzagging line, it's clearly less than 1,000 by a straight line. If there are no more questions on that, we'll go back to... Why is the instruction an aggregated discharge? Why doesn't it parrot the language of the statute? And does it have any effect? The fact that it doesn't. I was not on the committee, I did not go off the committee, so I don't know. I've argued in my brief that I believe that's an indication that at does not mean purposefully targeted. I've also argued that that's consistent with the first and second definitions. The first definition, if you look up in the dictionary, is a function word indicating in, on, or near. If I say throw something at something, it doesn't mean I purposefully targeted. It's in that general direction. And so, I think, well, counsel's right. Generally, when the legislature uses different words, we ascribe different meanings. Here, the words are so close that I don't think you do ascribe different meanings, as indicated both by the definition of at, by the fact that the committee on IPIs uses the same wording in the direction of for all of the offenses listed, and the fact is... But they did change the A1. They changed the A1 to say at, or in the direction of, or into, and the other ones are just in the direction of. So they did tailor it to fit A1 to some extent. That's true, which supports my argument even more, because if they're tailoring it in this way, why would they not tailor it by making it at if they didn't think in the direction of was correct? In addition, as I said, Your Honor noted before that the two mental states, intent and knowledge, are not the same, and if at means purposefully targeting something, then you're completely doing away with the mental state of knowledge, because it's different. The mental state of knowledge is that the result is practically certain. Not that it's absolutely certain, but practically certain, not that you have to target something, which brings me to the argument that we didn't prove knowledge. I've made two related arguments here. One is that, well, the related, one relying on cases like Keith C., Joel L., Leslie, and Houschild, that there is sufficient evidence that even though something else may be targeted, the person is practically certain that another person or another item might reasonably be hit, or might be practically certain to be hit. The other argument, which is closely related to that, because remember the language in transferred intent is a natural, probable consequence, which is very much, I would argue, similar to practically certain. I cited Lattimore. That's the case where the shoplifter is detained and struggles continually with the officer and the appellate court said, well, he didn't have to intend. It was sufficient for him to keep struggling to know that this was going to cause, this was practically certain to cause harm to the officer. The closer cases are Leslie and Keith C., Keith C. in which the defendant throws a brick at a car window. Now he said, well, it was just reckless. I didn't know that it was going to damage, going to cause harm to the person. They said, no, no, no, no, no. It was practically certain when you threw that brick at an occupied car that the person, even though you weren't throwing it at the person, that the person could experience bodily harm. The same thing was said in Leslie with regard to rocks being thrown at a school bus in which there was just the driver. All the kids had been let off, so it wasn't like it was full of people. It was practically certain he threw it at the bus. It was practically certain that it would cause harm to the person. In a slightly different way, but in Joel L., there was a kid sitting across from a cop after being arrested, and he kicked the table. The table hit the officer and caused bodily harm. He said it was practically certain when you hit that table that it was causing the officer. Now the only difference there between those cases and these cases is that it was the item which was targeted and then the person which was harmed. However, the case which counsel does not distinguish in his reply brief, a case from this court, House Child, is almost exactly on point with this case here. There two gentlemen broke into somebody's house at night. They went into the bedroom. There was a struggle with the victim in the bedroom. There was a dog in the room. The two gentlemen shot at the victim, and the dog is hurt. And what are they found guilty of? Criminal damage to property, because in shooting at the victim, they were practically certain that that dog was going to be hurt. That case is almost on all fours, excuse the pun, with this case. But they've not explained that away. If there are no more questions on that. And again, I would say that even if you say that, well, you have to show act, there was this testimony from Marion Eno and the girlfriend and the intended victims that the shooting was not at them but at the buildings. And again, just briefly in this case, I would say counsel said that they were on the sidewalk. Clearly the evidence was sufficient to show that they were in between the car being shot from and the homes. As I've argued before, there was lots of testimony about the homes being there, about the cars parked all over the place, and about the people's exhibit number 28 clearly shows all the homes in close proximity. The cases teach that it's not necessary that you target a particular vehicle or a particular home or something like that. It's only practically certain you know that the damage is going to result. Well, isn't that the point here? Even if they shot at those two rival gang members, intending to hit them, it is likely, it is practically certain that even if they hit them, they're still going to hit something else if they shoot more than one time. Exactly. Just like the case that I just mentioned, especially House Child. I see my time is up. I think we've covered, if this court has any more questions about the aggregated discharge, with whom may I ask that this court affirm the convictions? Thank you. Thank you, Mr. Hoffman. Mr. Goetsch, rebuttal argument? Mr. Goetsch, perhaps you could start off by distinguishing, if you wish to, House Child, counsel or analyze in House Child the case where the dog was injured? Correct. I think the evidence in House Child was they were in a room together. So that distinguishes that case from what the evidence in this case shows is it was practically certain that you're going to hit something in that room if you miss the intended victim. It's not shown that it was practically certain by the evidence in this case that the objects that were hit were practically certain to be hit because the proximity to the gang member wasn't shown. It's different than shooting in a room. The court said, well, of course, you're practically certain to hit something in that room. I think this is a different scenario where it's a much more wide open Well, I mean, don't we know, and maybe my colleague over there who knows guns much better, but don't we know that unless he hits one of those persons that's on the street, that bullet's going to travel. It's not going to stop once it gets to that party. Bullets travel farther than bricks, no matter where you are, whether you're in a small room or you're out in front of this building, God forbid. They travel farther. Is that something that we need expert testimony about at this time? Well, not necessarily expert testimony, but they I mean, bullets can also hit the ground. Bullets can hit anything. That doesn't mean it's practically certain that any of those objects that were actually damaged were going to be damaged under the factual scenario. So I think the State just has to go a little bit further than they did in showing that under this scenario that house and that car were practically certain to be hit. I think because the focus was on the gang members they just didn't do that in this instance. Is your argument that we should just reduce these convictions to reckless discharge, that your client was really just committing a reckless act? Is that your argument? Because that's what it seems like. You're saying that, well, he intended to shoot these rival gang members, but he missed, so it's not a knowing act. It's at best a reckless act. Is that really your argument? You could view it that way, but really the argument is that the State charged it wrong because aggravated discharge under A-2 fits this scenario perfectly. You're shooting in the direction of somebody. That's all they have to show. Instead they charge it under A-1 that he's purposely shooting at the house that he knows is occupied. Maybe they had talked to their witnesses before, and maybe they had police reports where Mrs. Nino said, I didn't see a person in the area, I only saw the car come by, the guy hung out the window, shot it at the house, toward the house across the street. I didn't see any person. So you have a State's attorney or an assistant State's attorney who's charging this. If you're going to say you're shooting at a person and your star witness who's on the scene and sees it all says there's no person, what else are you going to charge? One thing I wanted to touch on, and this probably doesn't directly answer your question, but I know I'm almost out of time, is the way that the IPI fits into this, is that if you believe he was shooting at the house, we don't know that the jury believed that, because the jury wasn't instructed to convict him if he was shooting at the house. They were instructed to convict him if he was shooting in the direction of the house, which I think when you, I mean you have to look at the language that the legislature uses, and I don't think that the statute makes in believing that at is a purposeful targeting. It doesn't make knowingly superfluous for the entire statute. It just says that A1 is a little bit different, and that's why they used at. I mean that has to be. If they used in the direction of eight out of nine times, why would they use at in the last one? It's because buildings are different. Buildings don't move. Buildings are big. All of these things indicate that you're purposefully targeting a big, giant building, because if you shoot in the direction of a building, that could mean you're miles away, and that would obviously be a ridiculous charge, but it would fit the crime if in the direction of was sufficient. And so we don't know that the jury convicted him of the actual elements of aggravated discharge. And I think that's why the IPI problem is important in this case. Well, I mean the second definition of at is that toward which an action is or motion is directed. So in the direction of is a definition of at, but if the legislature wanted to use the same definition in all of them, then they likely would have used the same phrase. Something like that. All right. We'd like to thank the attorneys for their arguments today. The case will be taken under advisement with very short recess.